JERRY D. VANCLEAVE and HARDEMAN MUSIC
·COMPANY, Plaintiffs-in-Error, v. DONALD R.
NAPIER, Defendant-in-Error.—399 S.W.(2d) 784.

Western Section. April 27, 1964.

Certiorari Denied by Supreme Court, October 26, 1964.

Elam & Glasgow, Union City, for plaintiffs in error.

Miles & Miles, Union City, for defendant in error.

CARNEY, J. The plaintiff below, Donald R. Napier, age 20, was injured when the motorcycle which he was riding collided with a panel truck driven by defendant, Jerry D. Vancleave, and owned by the defendant, Hardeman Music Company. The jury returned a verdict of $11,000.00 in plaintiff's favor; judgment was entered; and both defendants have appealed in error.

The accident happened on May 21, 1962, about 7:30 P.M. at a point on U. S. Highway 51 about 3½ miles northeast of Union City in Obion County, Tennessee. Defendant Jerry Vancleave, age 23, was traveling northward up a hill on the east side of U. S. Highway 51. The plaintiff below, Donald Napier, was attempting to pass Vancleave's truck and was riding in the west or left lane of U. S. 51 traveling in the same direction.

Defendant Vancleave was employed as a driver and salesman for Hardeman Music Company and had left an organ for demonstration at the home of Mr. Holly located

on the west side of U. S. Highway 51 about midway of the hill up which the parties were traveling. Defendant Vancleave turned the panel truck to the left across the center line toward the driveway of Mr. Holly and directly into the path of young Donald Napier who was attempting to pass the panel truck driven by defendant Vancleave. Napier's motorcycle was struck by the panel truck and thrown into some mail boxes standing near the Holly driveway. Plaintiff Donald Napier was severely injured.

The first count of plaintiff's declaration charged the defendant, Jerry Vancleave, with common law negligence and averred that the defendant suddenly, without any warning or signal of any kind, turned the panel truck from a direct line of traffic to the left directly in the path of plaintiff's motorcycle causing plaintiff's motorcycle to collide with the panel truck thereby causing plaintiff serious injuries, etc.

The second count charged him with statutory negligence, namely the violation of the following subsections of T.C.A. Section 59-843:

"1. Every driver who intends to start, stop or turn, or partly turn from a direct line, shall first see that such movement can be made in safety and whenever the operation of any other vehicle may be affected by such movement shall give a signal required in this section, plainly visible to the driver of such other vehicle of his intention to make such movement.

"2. The signal herein required shall be given by means of the hand and arm, or by some mechanical or electrical device approved by the department of safety, in the manner herein specified. Whenever the signal is given by means of the hand and arm, the driver shall

indicate his intention to start, stop, turn, or partly turn, by extending the hand and arm from and beyond the left side of the vehicle, in the following manner:

"3. For left turn, or to pull to the left, the arm shall be extended in a horizontal position straight from and level with the shoulder.

\* \* \* \* \* \*

"6. Such signals shall be given continuously for a distance of at least fifty (50) feet before stopping, turning, partly turning, or materially altering the course of the vehicle.

"7. Drivers having once given a hand, electrical or mechanical device signal, must continue the course thus indicated, unless they alter the original signal and take care that drivers of vehicles and pedestrians have seen and are aware of the change."

The defendant, Vancleave, testified that he did give the proper hand signals for the turn but plaintiff testified that no signals were given. Since the jury found in favor of the plaintiff, this finding establishes as a fact, for the purposes of this appeal, that no signals were given.

The defendants contended that the plaintiff was guilty of proximate contributory negligence both in fact and in law because at the time of the collision the plaintiff was driving his motorcycle to the left of the center line of the highway in an area which had been declared a no-passing zone by the department of highways under the authority of T.C.A. Section 59-821 which is as follows:

"59-821. No-passing zones.—The state department of highways and public works is hereby authorized to

determine those portions of any highway where overtaking and passing or driving to the left of the roadway would be especially hazardous and may by appropriate signs or markings on the roadway indicate the beginning and end of such zones and when such signs or markings are in place and clearly visible to an ordinarily observant person every driver of a vehicle shall obey the directions thereof. (Acts 1955, ch. 329, sec. 20.)''

It was admitted that the department of highways had declared the hill on which the collision occurred a no-passing zone for northbound traffic and had painted a yellow line on the right side of the center line of the highway. This yellow line extended for a distance of 397 feet of which approximately 173 feet were south of the center of the Holly driveway and approximately 226 feet were north of the center of the driveway.

As defendant Vancleave drove the panel truck northward along said highway he passed a Chevrolet automobile driven by the witness, Sarah Insco. Mrs. Insco continued to follow the panel truck and as she passed Napier's Store operated by plaintiff's brother she noticed an Oldsmobile automobile and a motorcycle parked in the vicinity of the store. Shortly after the Insco automobile passed the store, Jack Easley accompanied by his brother, Pat Easley, came out of the store and got in the Oldsmobile and the plaintiff came out of the store and got on his motorcycle and they started up Highway 51 northward toward Fulton, Kentucky. They planned to spend the evening together.

As the line of vehicles approached the scene of the accident the Easley Oldsmobile was third in the line of traffic and plaintiff's motorcycle was fourth. The Easley

Oldsmobile passed the Insco Chevrolet and the plaintiff did the same. The Easley Oldsmobile pulled back into the right lane of traffic immediately behind defendant's panel truck. Plaintiff remained in the left traffic lane and accelerated to pass the Easley Oldsmobile. Just as he was about to pull back to the east side of the highway in front of the Easley Oldsmobile and behind the defendant Vancleave's panel truck, the defendant Vancleave reduced the speed of the panel truck and the plaintiff Donald Napier decided that he did not have sufficient room to pull in between the two vehicles safely.

The plaintiff, Donald Napier, was thoroughly familiar with the yellow line and the no-passing zone since he lived in this area. There was no yellow line on the highway at the point where he had pulled over to the left side of Highway 51 to pass the Insco Chevrolet. The plaintiff was about even with the south end of the yellow line when he discovered that he could not safely pull in between the Easley Oldsmobile and the Vancleave panel truck. He then decided to proceed on northward up the hill on the left side of the highway and to the left of the yellow line and to pass the defendant Vancleave on the hill. In the course of passing the defendant on the left he was injured when the defendant Vancleave turned to his left across the highway to the entrance to the Holly driveway.

Attorneys for plaintiffs-in-error insist that His Honor the Trial Judge erred in overruling defendants' motion for a directed verdict at the conclusion of all the evidence. The plaintiff contended that he was put in a place of peril through no fault of his own by the alleged negligence of the defendant in suddenly slowing down the speed of his panel truck without signaling thereby mak-

ing it unsafe for the plaintiff to pull in between the Easley automobile and the defendants' panel truck and that the plaintiff had no alternative but to proceed to try to pass the defendant, Vancleave, on the left even though it was up the hill and to the left of the yellow line. Even though the plaintiff was guilty of negligence per se in driving to the left of the yellow line and attempting to pass in a no-passing zone it does not follow that he was guilty of proximate contributory negligence in so doing.

In the case of Adams v. Brown, 1953, 37 Tenn.App. 258, 262 S.W.(2d) 79, this court, in an opinion by Presiding Judge McAmis, held that where the plaintiff, Mrs. Adams, was guilty of negligence per se in attempting to pass defendant's truck at an intersection in violation of Williams Code Section 2686, subsection c, and was injured when defendant's truck made a left turn in front of her without signaling as provided by Williams Code Section 2682, it was a question for the jury to determine whether such negligence on the part of the plaintiff, Mrs. Adams, caused or contributed to her injuries. We think the decision of Adams v. Brown is controlling of the case at bar and that the defendants' motion for a directed verdict was properly denied. Assignments of error Nos. I and II are therefore respectfully overruled:

Assignments of error III and IV insist that the verdict of the jury is excessive to the extent that it evidences passion, prejudice and unaccountable caprice on the part of the jury. Dr. R. G. Latimer of Union City testified that the plaintiff sustained a very severe scalp wound which required several dozen stitches to sew up. In addition, he sustained fractures of the fifth, sixth and seventh thoracic vertebrae. Dr. Latimer was of opinion that the plaintiff had sustained a mild concussion of the brain.

Plaintiff spent forty-five days in the hospital and was off work from May 21, 1962, until August 7, 1962. At the time of the injury plaintiff was employed at Reelfoot Packing Company at Union City, Tennessee, at an average weekly wage of $125.00. Plaintiff proved the following special damages:

| | |
|---|---:|
| Loss of his motorcycle | $   350.00 |
| Doctor's bills | 183.00 |
| Hospital bill | 757.25 |
| Loss of wages | 1,750.00 |
| Total | $3,040.25 |

Plaintiff testified that though he was back at work at Reelfoot Packing Company doing heavy work his injuries caused him considerable pain especially after a hard day's work and Dr. Latimer testified that because of the back injuries the plaintiff would have to sleep on a firm, hard bed for an indefinite period of time.

From our review of the record we do not find the verdict sufficiently excessive to require a remittitur under the authority of T.C.A. Section 27-119. Therefore, assignments of error III and IV are respectfully overruled.

Assignments of error V and VI complain of certain portions of His Honor's charge to the jury. Assignments of error VII, VIII, IX, X and XI complain of the failure of His Honor the Trial Judge to charge certain special requests submitted by defendants.

We find no error in that portion of His Honor's charge contained in assignment of error No. V and the assignment is overruled.

Assignment of error No. VI is as follows:

"The Court erred in its general charge to the jury as follows:

" 'Now the plaintiff insists that he passed the two cars south of, and behind, the defendant's truck before he reached the yellow line and turned in behind the defendant's truck, whereupon he insists the defendant Vancleave suddenly, without notice or warning, suddenly and sharply slowed down immediately in front of him, placing him in an emergency and forcing him to cross the yellow line to escape a collision with the truck. If you find this theory to be true from the facts proven in the case, he would not be guilty of negligence unless you find the emergency was brought about by the plaintiff's own negligence.' "

We think His Honor the Trial Judge misunderstood plaintiff's testimony with reference to crossing the yellow line. Plaintiff did not contend that he ever pulled in behind the defendant's panel truck after passing the Easley Oldsmobile. Plaintiff testified that just about the time he was passing the Easley automobile and was preparing to pull in behind defendant's panel truck and in front of the Easley Oldsmobile, the defendant suddenly reduced the speed of the panel truck and plaintiff decided that it was not safe to pull in between the two vehicles. Further, the plaintiff testified that he was then at the southern end of the yellow line and decided to proceed on northward up the hill on the left side of the road and to pass the panel truck on the hill.

The plaintiff testified that he was fully aware that this was a no-passing zone. He admitted that there was nothing to prevent him from reducing the speed of the motorcycle and pulling in behind the Easley Oldsmobile instead of in front of it. Thus, it clearly appears that at

the time the plaintiff elected to pass the defendant on the hill in a no-passing zone he was not in any emergency and it was his obligation, when he saw that he could not safely pull in behind defendant's truck in front of the Easley Oldsmobile, to apply his brakes and pull in behind the Easley Oldsmobile.

■ Under these circumstances we think the charge complained of above in assignment of error No. VI was erroneous and that His Honor should have charged the jury that the plaintiff, Donald Napier, was guilty of negligence per se in attempting to pass the defendant's panel truck on the hillside in a no-passing zone. Assignment of error No. VI is sustained.

■ Assignment of error No. VIII complains of the refusal of His Honor the Trial Judge to charge defendants' special request No. 2 which is as follows:

"There is no question in this record as to the existence of yellow no-passing lines at the point where the collision occurred, as all eye witnesses and exhibits agree thereto. Under Section 59-821, Tennessee Code Annotated, the Department of Highways and Public Works for the State of Tennessee was authorized to place such lines at points on the highway in this state which, in the judgment and discretion of such department, was such a point or area 'where overtaking and passing or driving to the left of the roadway would be especially hazardous, and each driver of a vehicle is required to obey the direction thereof.' Accordingly, if you find that the plaintiff was operating his motorcycle to the left of these no-passing marks at the time of the collision, and that he knew they were there prior to the time he approached the area, then such violation of the statute would constitute negligence, and if you

find such negligence to be the proximate cause of, or proximately contributed to the cause of, the accident, then the plaintiff cannot recover in this suit.''

This is a correct statement of the law and His Honor was in error in refusing it. Assignment of error No. VIII is sustained.

In his excellent brief attorney for plaintiff insists very strongly that T.C.A. Section 59-821 relating to no-passing zones was enacted to protect only the motorists approaching from the opposite direction and has no applicability as to collisions between motorists traveling in the same direction. He cites and relies upon Salvitti v. Throppe (1942), 343 Pa. 642, 23 A.(2d) 445, 138 A.L.R. 842, and an annotation in 60 A.L.R.2d 214. Hence, he insists that insofar as defendants are concerned the plaintiff could not have been guilty of statutory negligence by going up the hill on the left of the yellow line. We are unable to agree with this argument. The no-passing zones were established for the protection of all motorists and non-motorists and their property in the immediate area.

Assignment of error No. IX complains of the refusal of His Honor to charge defendants' special request No. 3 which is as follows:

''It makes no difference whether the negligence of the plaintiff be slight or gross, if such negligence directly and proximately contributed to the accident and injury, it will bar a recovery on the part of the plaintiff.''

This is a correct statement of the law and His Honor was in error in refusing to charge it. Assignment of error No. IX is sustained.

Assignments of error VII, X and XI relate to the refusal of the Trial Judge to charge defendants' special requests Nos. 1, 4 and 5. In view of our action on assignments of error VI and VIII it becomes unnecessary to consider these assignments in detail and they are overruled.

From a review of the entire record it is our opinion that the charge as given by His Honor the Trial Judge did not clearly present to the jury the three questions to be decided by the jury: (1) Was the defendant, Vancleave, guilty of proximate common law negligence? (2) Was the defendant, Vancleave, guilty of proximate statutory negligence? (3) Did the negligence of the plaintiff, Donald R. Napier, in attempting to pass the defendant's truck in a no-passing zone contribute directly and proximately to his own injuries?

The judgment of the lower court must be reversed and the cause remanded for a new trial. The costs of this appeal will be taxed against the defendant-in-error, Donald R. Napier. The costs in the lower court will abide the subsequent trial.

Avery, P.J. (W.S.), and Bejach, J., concur.